IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
COLUMBIA DIVISION

| | | |
|---|---|---|
| Trent M. Simpson, | ) | C/A No. 3:12-401-JFA-PJG |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **REPORT AND RECOMMENDATION** |
| | ) | |
| City of Columbia, | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

The plaintiff, Trent M. Simpson ("Simpson"), filed this action pursuant to Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. §§ 2000e, et seq., against the defendant, the City of Columbia ("the City"). This matter is before the court pursuant to 28 U.S.C. § 636(b) and Local Civil Rule 73.02(B)(2) DSC for a Report and Recommendation on the City's motion for summary judgment. (ECF Nos. 34, 35, & 36.) Simpson filed a response in opposition (ECF Nos. 42 & 43), the City replied (ECF No. 46), and both parties filed supplemental memoranda (ECF Nos. 47 & 48). Having reviewed the parties' submissions and the applicable law, the court finds that the defendant's motion should be granted.

**BACKGROUND**

The following facts are either undisputed or are taken in the light most favorable to Simpson. Simpson, an African-American male, was hired as a City of Columbia firefighter in September of 1992, where he served in various capacities until his termination in 2010. In addition to his job as a firefighter, Simpson owned and operated a travel company, Simpson Family Travel. Prior to his termination from employment with the City, Simpson was the subject of various disciplinary

measures. First, he received a written reprimand in 2007 for sending an e-mail, without the approval of the fire department or the city manager, promoting his personal travel agency business. Then, in 2009, Simpson was suspended for three days for violating City policies prohibiting City employees from using their official positions or the City's facilities for private gain and prohibiting solicitation during work time or at a City workplace other than for authorized charity events sponsored by the City. This suspension stemmed from Simpson's solicitation of donations to produce a fundraising calendar depicting firefighters.[1]  Following the fire department's investigation of this incident, Deputy Fire Chief Aubrey Jenkins issued a memorandum to Simpson instructing him that further such conduct would not be tolerated. Simpson appealed his suspension to the City's Grievance Committee, which recommended upholding Simpson's suspension, and the City Manager accepted the Grievance Committee's recommendation.

Following this incident, Simpson maintained photographs of firefighters in their gear posing with City fire department equipment on Simpson Family Travel's website. Additionally, in June 2010, Simpson visited a fire station to sell t-shirts for an event sponsored by Simpson Family Travel promoting the firefighting calendar. Simpson represented to the captain on duty at the station that he had permission to sell the t-shirts and promote the event. An investigation of the incident determined that Simpson falsely represented that he had permission to conduct fundraising at the fire station. Fire officials also learned that Simpson had attempted to sell t-shirts at department headquarters without receiving approval, and had taken a photograph of an on-duty City firefighter posing in front of City fire equipment, which Simpson used on a flyer and poster advertising the

---

[1] According to Simpson, funds from the sales of the calendar were to be used for charitable purposes; however, because he did not raise sufficient money to produce the calendar, he simply donated the funds he had raised in furtherance of the calendar to charity.



calendar event sponsored by his private travel company. Further, the department's investigation determined that one or more local businesses which had donated money in furtherance of the calendar event were under the impression that the event was sponsored by the fire department rather than Simpson Family Travel. Moreover, on June 19, 2010, the day of the calendar event, Simpson was scheduled to work overtime but instead left early to attend the event, leaving another employee to perform Simpson's assigned overtime duty. Simpson was issued a written reprimand for dereliction of duty.

Effective August 30, 2010, Simpson's employment was terminated for the stated reason that despite his 2009 suspension, Simpson had continued to use City facilities and equipment and to solicit funds for the purposes of advancing his personal business. Simpson appealed his termination to the Grievance Committee. Following a hearing, the Committee found Simpson's termination to be proper and recommended that it be upheld. The City Manager accepted the Committee's recommendation. After exhausting his administrative remedies, Simpson filed this action, contending that City employees who engaged in similar conduct were treated more favorably and alleging that he was disparately disciplined based upon his race and gender.

## DISCUSSION

### A.     Summary Judgment Standard

Summary judgment is appropriate only if the moving party "shows that there is no genuine dispute as to any material fact and the [moving party] is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A party may support or refute that a material fact is not disputed by "citing to particular parts of materials in the record" or by "showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible



evidence to support the fact." Fed. R. Civ. P. 56(c)(1). "[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* [dispute] of *material fact*." Ballinger v. N.C. Agric. Extension Serv., 815 F.2d 1001, 1005 (4th Cir. 1987) (emphasis in original) (internal quotation marks & citation omitted). A fact is "material" if proof of its existence or non-existence would affect the disposition of the case under the applicable law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248-49 (1986). An issue of material fact is "genuine" if the evidence offered is such that a reasonable jury might return a verdict for the non-movant. Id. at 257.

In discrimination cases, a party is entitled to summary judgment if no reasonable jury could rule in the non-moving party's favor. Dennis v. Columbia Colleton Med. Ctr., Inc., 290 F.3d 639, 645 (4th Cir. 2002). The court cannot make credibility determinations or weigh the evidence, but the court should examine uncontradicted and unimpeached evidence offered by the moving party. Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 150 (2000). The court must determine whether a party's offered evidence is legally sufficient to support a finding of discrimination and look at the strength of a party's case on its own terms. See id. at 148 (stating that "[c]ertainly there will be instances where, although the plaintiff has established a prima facie case and set forth sufficient evidence to reject the defendant's explanation, no rational fact-finder could conclude that the action was discriminatory").

**B.     Burden Shifting Framework in Employment Cases**

A plaintiff may demonstrate discrimination through direct or circumstantial evidence. When direct evidence is lacking, a plaintiff may produce circumstantial evidence and proceed under the McDonnell Douglas burden shifting framework. Warch v. Ohio Casualty Ins. Co., 435 F.3d 510, 520 (4th Cir. 2006); see also McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802 (1973). Pursuant to this framework, once the plaintiff establishes a *prima facie* case of discrimination, the burden shifts to the defendant to produce evidence of a legitimate, nondiscriminatory reason for the adverse action.  Merritt v. Old Dominion Freight, 601 F.3d 289, 294 (4th Cir. 2010).   The defendant's burden "is a burden of production, not persuasion." Reeves, 530 U.S. at 142.  Once a defendant meets this burden by producing affidavits or testimony demonstrating a legitimate, nondiscriminatory reason, "the McDonnell Douglas frame work—with its presumptions and burdens—disappear[s], and the sole remaining issue [is] discrimination *vel non*." Id. (internal quotation marks & citations omitted).

In other words, if the defendant meets the burden to demonstrate a legitimate, nondiscriminatory reason, the plaintiff must demonstrate by a preponderance of the evidence that the proffered reason was " 'not its true reason[], but [was] a pretext for discrimination.' " Merritt, 601 F.3d at 294 (quoting Texas Dep't of Cmty. Affairs v. Burdine, 450 U.S. 248, 253 (1981)). Accordingly, the plaintiff's burden of demonstrating pretext " 'merges with the ultimate burden of persuading the court that [the plaintiff] has been the victim of intentional discrimination.' " Merritt, 601 F.3d at 294 (quoting Burdine, 450 U.S. at 256) (alterations in original); see also Diamond v. Colonial Life & Accident Ins. Co., 416 F.3d 310, 319 (4th Cir. 2005).  To meet this "merged" burden, the employee may prove by a preponderance of the evidence that the decision maker's



affidavit is untrue or that the employer's proffered explanation is unworthy of credence. Burdine, 450 U.S. at 256.

"[A] plaintiff's prima facie case, combined with sufficient evidence to find that the employer's asserted justification is false, *may* permit the trier of fact to conclude that the employer unlawfully discriminated." Reeves, 530 U.S. at 148. However, "if the record conclusively reveal[s] some other, nondiscriminatory reason for the employer's decision, or if the plaintiff create[s] only a weak issue of fact as to whether the employer's reason was untrue and there was abundant and uncontroverted independent evidence that no discrimination had occurred," summary judgment is appropriate. Id. Accordingly, the court must evaluate "the strength of the plaintiff's prima facie case, the probative value of the proof that the employer's explanation is false, and any other evidence that supports the employer's case and that properly may be considered on a motion for judgment as a matter of law." Id. at 148-49. "Notwithstanding the intricacies of proof schemes, the core of every Title VII case remains the same, necessitating resolution of the ultimate question of . . . whether the plaintiff was the victim of intentional discrimination." Merritt, 601 F.3d at 294-95.

**C.     Simpson's Claims**

The parties agree that to establish a *prima facie* case of disparate discipline, a plaintiff must show: (1) that he engaged in prohibited conduct similar to that of a person of another race, color, sex, religion, or national origin; and (2) that disciplinary measures enforced against him were more severe than those enforced against the other person. Lightner v. City of Wilmington, 545 F.3d 260, 264-65 (4th Cir. 2008). Generally, to be similarly situated and thus permit a valid comparison, the employees outside the protected class must have dealt with the same decision maker, been subject to the same standards, and engaged in the same conduct without mitigating circumstances that would

distinguish their conduct or the employer's treatment of them for it.  Mitchell v. Toledo Hosp., 964 F.2d 577, 583 (6th Cir. 1992) (Title VII & ADEA) (defining "similarly situated");[2] see also McGuinness v. Lincoln Hall, 263 F.3d 49, 53-54 (2d Cir. 2001) (emphasizing that an employee must be similarly situated in all material respects); Haywood v. Locke, 387 Fed. App'x 355, 359 (4th Cir. 2010) (stating that "plaintiffs are required to show that they are similar in all relevant respects to their comparator").  In support of his claim, Simpson presents several comparators outside his protected class that he claims engaged in similar conduct but were not disciplined as severely.  The City argues that the conduct of each of these employees is distinguishable from Simpson's, precluding them from serving as viable comparators for Title VII purposes.  The court will address each comparator in turn.

**Branham.**  Simpson contends that Christopher Branham, a white male, was not disciplined even though he held a golf tournament fundraiser for the Columbia Firefighter Association without receiving permission from City or fire department officials.  However, Branham's unrefuted deposition testimony shows that the golf tournament was organized and conducted while off duty, was not connected to any personal business of Branham's, and did not use or depict any City or fire department equipment or logos.  Accordingly, unlike Simpson's fundraising and planning efforts, Branham's conduct did not require approval under the City's policies.  Branham is therefore not a viable comparator for Title VII purposes.

---

[2] The Fourth Circuit has not issued a published case on this point; however, the following unpublished cases have cited with approval the Mitchell decision: Atkins v. Holder, 529 Fed. App'x 318, 321 (4th Cir. 2013); Haywood v. Locke, 387 Fed. App'x 355, 359 (4th Cir. 2010); Forrest v. Transit Mgmt. of Charlotte, Inc., 245 Fed. App'x 255 (4th Cir. 2007); Heyward v. Monroe, 166 F.3d 332, 1998 WL 841494, at *2 (4th Cir. 1998); Edwards v. Newport News Shipbuilding & Dry Dock Co., 166 F.3d 1208, 1998 WL 841567, at *3 (4th Cir. 1998).



**Haynie**.  Next Simpson argues that April Haynie, a white female, was not disciplined even though she similarly organized an event showcasing firefighters in an effort to raise money to produce a firefighters calendar to raise money for charity.  Again, however, Haynie's conduct is different from Simpson's in that she had permission from the fire chief to hold the event, she instructed all event participants that City and fire department emblems had to be obscured, and all photographs were taken off duty.  These distinguishing circumstances prevent Haynie from serving as a viable comparator to Simpson, who undisputably took photographs of a firefighter wearing a visible City emblem while on duty, used photographs depicting City emblems on the website of his personal business, and solicited on City property without permission.  Further, Simpson engaged in this activity after receiving oral and written reprimands and being suspended for similar activity, whereas Haynie had no previous disciplinary history for similar conduct.  The difference in the disciplinary histories of Simpson and Haynie provide further mitigating circumstances preventing a meaningful comparison of the City's treatment of these two firefighters.

**Joyner.**  The third comparator upon whom Simpson relies is Robert Joyner, a white male.  Joyner, like Simpson, had employment apart from the fire department; Joyner's other employer was a clothing provider identified as Newton's.  Simpson contends Joyner promoted Newton's during a bid process and furthered Newton's business interests by acquiring firefighters' sizes after Newton's was awarded the bid to supply new uniforms and equipment to the fire department.  However, Simpson offers no admissible evidence to support his speculation that Joyner improperly participated in the bid process.  By contrast, the City has presented the deposition testimony of Joyner denying that he improperly aided Newton's in the bid process.  Simpson's remaining allegation of impropriety by Joyner—fitting firefighters for new clothing and equipment while on



duty—is not sufficiently similar conduct to permit a valid comparison to Simpson's repeated use of City locations, equipment, and on-duty personnel to promote an event sponsored by his private business.

**Edmonds.** Finally, Simpson attempts to compare himself to Mike Edmonds,[3] a white male, who gave consent for two women identified as "Venom and Nakai" to pose for pictures on City fire equipment while wearing City of Columbia logos and gear. The parties appear to agree that Venom and Nakai were "scantily clad" for these photographs.[4] However, the City has introduced evidence, which Simpson has not refuted, that Edmonds was unaware of the scandalous nature of the photographs at the time he gave his consent for the women to pose using City fire gear and equipment.[5] Nor has Simpson presented any evidence that Edmonds had previously been warned or disciplined for similar conduct.

## RECOMMENDATION

Accordingly, Simpson has failed to show that he was disciplined more severely than a similarly situated person outside his protected classes. Nor has he offered any evidence that the City's stated reasons for disciplining Simpson were a pretext for discrimination based upon race or

---

[3] Initially Simpson offered Vincent Stocker as a comparator with regard to this incident; however, after the City pointed out in its filings that Stocker, an African-American male, is within both of Simpson's protected classes, Simpson submitted that Stocker's supervisor, Mike Edmonds, a white male, is the proper comparator. (See Pl.'s Supp'l Mem. Opp'n Summ. J., ECF No. 47 at 1-2.)

[4] Simpson also argues that the fact that he was disciplined for taking photographs of male firefighters while Edmonds (also male) was not disciplined for permitting photographs of females is probative of discriminatory animus based upon gender. This contention utterly fails to carry the day under Title VII's requirements.

[5] In fact, the undisputed evidence shows that Edmonds was not even on site when the photographs were taken.



gender. Thus, no reasonable jury could find on this record that Simpson was a victim of unlawful discrimination. See Merritt, 601 F.3d at 294-95 ("Notwithstanding the intricacies of proof schemes, the core of every [discrimination] case remains the same, necessitating resolution of the ultimate question of . . . whether the plaintiff was the victim of intentional discrimination."). The court therefore recommends that the City's motion for summary judgment (ECF No. 34) be granted.

_____
Paige J. Gossett
UNITED STATES MAGISTRATE JUDGE

January 3, 2014
Columbia, South Carolina

*The parties' attention is directed to the important notice on the next page.*

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge.  Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections.  "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.' "  Diamond v. Colonial Life & Acc. Ins. Co., 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); see Fed. R. Civ. P. 6(a), (d).  Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

> Robin L. Blume, Clerk
> United States District Court
> 901 Richland Street
> Columbia, South Carolina 29201

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.**  28 U.S.C. § 636(b)(1); Thomas v. Arn, 474 U.S. 140 (1985); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984).